## TRIMBLE et al. v. TEXARKANA & FORT SMITH RAILWAY COMPANY, Appellant.

### Division One, October 19, 1906.

1. **RECEIVERSHIP: Attorneys' Fee: Subsidiary Companies.** The fact that attorneys rendered their bills to the controlling railroad company which operated the whole system, including the lines of the subsidiary companies, and received all its earnings, during the days that the principal company was a going concern, is no reason why, when a receiver is appointed for all the companies, and the same attorneys represent all and protect the interests of each, they should not be paid by one of the subsidiary companies for services rendered it during the continuance of the receivership and a reorganization of the properties.

2. ———: ———: ———: **Implied Contract.** The subsidiary company had authority to make contracts, even though the principal company, as owner and controller of its stock, elected its officers and directors and conceded to them only such control as the laws of its domicile required; and where attorneys acted for that company in the receivership proceedings and in the reorganization of the properties, which services were accepted, it must be held that it did so under an implied contract to pay for such services their reasonable value.

3. **SATISFACTION: Must be Pleaded.** Satisfaction must be pleaded in order to be available as a defense in a suit on an implied contract to pay for services rendered.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*S. W. More* and *Cyrus Crane* for appellant.

(1) There was no express contract between the parties. It was plaintiffs' duty to render the services sued for under the retainer from the Gulf Company and to get pay therefor from that company. 2 Clark & Skyles, Law of Agency, sec. 691, p. 1507; Stewart v.

Emerson, 70 Mo. App. 486. (2) There can be no recovery in the case on an implied contract or implied promise to pay. 2 Clark & Skyles, Law of Agency, p. 1058; Lamar v. Hall, 129 Fed. 84; Muscott v. Stubbs, 24 Kas. 522; Roselius v. Delechaise, 5 La. Ann. 481; Westmoreland v. Martin, 24 S. C. 238; Wailes v. Brown, 27 La. Ann. 411; Hersled v. Moss, 28 Ind. 354; Jones v. Wood, 76 Pa. St. 410; Smith v. Lyford, 24 Me. 150; Bank v. Benton, 59 Ky. (2 Metc.) 243; Railroad v. Larned, 26 Ill. 220; Grimball v. Cruse, 70 Ala. 544; Simms v. Floyd, 65 Ga. 719. (3) There can be no recovery because the alleged services were not and could not be of any value or benefit to defendant. (4) There can be no recovery because to permit it would be to allow an attorney to represent, and collect fees from, both parties to the same suit, which is contrary to the policy of the law. 2 Am. and Eng. Ency. Law (2 Ed.), 295; Weeks on Attorneys at Law, sec. 271; Farwell v. Telegraph Co., 44 N. E. (Ill.) 891; McDonald v. Wagner, 5 Mo. App. 56; Strong v. Brennan, 183 Ill. 97; White v. Haffaker, 27 Ill. 349.

*John A. Eaton* for respondents.

(1) The defendant, the Texarkana & Fort Smith Railway Company, was a party in its own behalf in the negotiations and in the proceedings in the receivership suit in which the legal services sued for were rendered, and accepted the benefits, advantages and results of the services, and in law contracted and became obligated to pay the reasonable value of such services. Reinhard on Agency, sec. 83; Weeks on Attorneys at Law, secs. 187, 339 and 340; Clark & Skyles on Agency, secs. 56 and 691; Taussig v. Railroad, 166 Mo. 28 (same case again decided 186 Mo. 269); Webb v. Browning, 14 Mo. 355; Forsyth v. Doolittle, 120 U. S. 73; Ebel v. Stringer (Neb.), 102 N. W. 466; Southgate v. Railroad, 61 Mo. 89; Kiley v. Forsee, 57 Mo. 390; Seals v. Ed-

mondson, 73 Ala. 295; Davis v. Trimble (Ark.), 88 S.
W. 920; Brown v. Arnold, 131 Fed. 723.   (2) After
the   1st day of April, 1899, and the appointment of
separate receivers for the properties of the Kansas
City, Pittsburg & Gulf Railroad Company and the
Texarkana & Fort Smith Railway Company, the prior
relations in respect to the property of each became and
were severed in law and in fact, and the property of the
Gulf Company was not similarly situated nor admin-
istered in the receivership suit with that of the defend-
ant; and the defendant company did enter the negotia-
tions and proceedings in which the services sued for
were rendered for the primary purpose in its own be-
half to preserve its property as a part of an entire sys-
tem of railroad under the management of a reorganized
corporation.   Davis v. Walker, 131 Ala. 204; Cook on
Corporations, sec. 709; Railroad v. Railroad, 51 Fed.
309; Fitzgerald v. Railroad, 45 Fed. 813; National
Water Works Co. v. Kansas City, 78 Fed. 428; Alder-
son on Receivers, pp. 199 and 348; U. S. Trust Co. v.
Railroad, 150 U. S. 287. (3) The defendant, Texarkana
& Fort Smith Railway Company, and its officers, were
advised and had knowledge of the negotiations and pro-
ceedings in its behalf and in behalf of its property, ac-
quiesced therein throughout, and accepted the results
of the services sued for and is therefore in law, upon
the facts as alleged in the petition and shown in the
testimony, estopped to repudiate or deny liability for
such services.   Reinhard on Agency, secs. 89 and 91;
Clark & Skyles on Agency, secs. 57, 350 and 636 a.   (4)
The alleged satisfaction and payment of the services
sued for by reason of the judgment recovered against
the Kansas City, Pittsburg & Gulf Railroad Company
was not pleaded or alleged in the answer, and if under
any theory of the facts as shown in the record such
a defense could have been proven, it is not and cannot
be considered a defense in this action because it was

not pleaded. Edwards v. Gibboney, 51 Mo. 129; Wilkerson v. Farnham, 82 Mo. 672; Henderson v. Davis, 74 Mo. App. 1; State to use v. Williams, 48 Mo. 210; Dwyer v. Rohan, 99 Mo. App. 120. (5) The representation by plaintiffs of the defendant and the other companies during the negotiations from April 1 to April 28, 1899, was by and with the consent of all, and in the interest of all. In the legal proceedings in the receivership suit thereafter, the services were rendered by and with the consent of all, and to carry out a common and agreed purpose. There were no adverse or hostile interests, the receivership suit being a step and incident in connection with the performance of a contract between the parties interested to accomplish the reorganization and consolidation of the railroads. The plaintiffs, in fact, did not appear for adverse interests in any of the proceedings or suits shown in the record. While this defense was not pleaded, there is neither fact nor law to support it. The law against dual representation applies to adverse parties and does not apply in this case. Weeks on Attorneys at Law, sec. 271. (6) The judgment of the court below was supported by uncontradicted proof and is in amount for the reasonable value of the services. The presentation of claims in the receivership suit does not estop plaintiffs from claiming for additional services and for the true amount. There being an implied contract and defendant having received and accepted the services and their benefits, the cases cited by appellant do not apply. 3 Am. and Eng. Ency. Law (2 Ed.), 424 and 437; Gorman v. Banigan (R. I.), 46 Atl. 38; Forsyth v. Doolittle, 120 U. S. 73; Graves v. Sanders, 125 Fed. 690; Weeks on Attorneys at Law, sec. 337.

VALLIANT, J.—Plaintiffs, who are attorneys-at law, sue to recover the value of legal services alleged to have been rendered by them to defendant in certain

negotiations and suits which resulted in a foreclosure of the mortgages and a reorganization of a system of railroads of which the defendant was one of the constituent parts.

The Kansas City, Pittsburg and Gulf Railroad Company was a Missouri corporation, operating a system of railroads extending from Kansas City, Missouri, to Port Arthur, Texas. One of the railroads in the system was that of the defendant, the Texarkana and Fort Smith Railway Company, a Texas corporation, and another that of the Kansas City, Shreveport and Gulf Railway Company, a Louisiana corporation. The Kansas City, Pittsburg and Gulf Railroad Company, the Missouri corporation, which hereinafter we will call the Gulf Company, owned or controlled all of the stock and the bonds issued by the other two companies and operated the whole line. On the one side it is said that the Gulf Company, the Missouri corporation, was really the parent and owner of the whole system extending from Kansas City to the Gulf, that the Texas and Louisiana corporations were but subsidiary organizations, that the only reason for the organization of a separate corporation in Texas was that by the laws of that State a domestic corporation only could own or operate a railroad therein, and the reason for the Louisiana corporation was that only a Louisiana corporation could exercise the right of eminent domain in that State. The plaintiffs, on the other hand, deny that the Texas corporation was a mere subsidiary organization and assert that it was formed before the Missouri corporation was, but at all events it was, under the laws of Texas, required to have and did have its offices and officers in that State, that it owned 200 miles of railroad, and had issued its mortgage bonds to the amount of $5,591,000. But plaintiffs admit that the Gulf Company owned all of the stock and bonds of the Texas Company and had hypothecated them as collateral security for its own

mortgage bonds and other indebtedness, and it opera-
ted the whole system as one road.

For several years before the litigation out of which
this suit arises the plaintiffs had been the attorneys for
the Gulf Company, and under that employment had
rendered services to the defendant the Texas Company,
and also to the Louisiana Company; they always ren-
dered their bills to the Gulf Company and the latter.
paid them, and that course of business. continued down
to the time when, under the foreclosure litigation out
of which this suit grew, receivers for the several roads
were appointed.

About the first of April, 1899, the Gulf Company
made default in payment of its mortgage debt, and a
suit was filed against it in the State circuit court in
Jackson county, in the name of Grannis and others as
plaintiffs, under which receivers were appointed, who
took charge of the railroad in Missouri. The plain-
tiffs in the suit at bar were the attorneys who filed the
suit for Grannis, but it was done at the instance of the
Gulf Company, and to forestall an anticipated suit
from a more hostile source. That suit was removed
into the Federal court on the petition of one of the
defendants, and, pending a motion to remand it to the
State court, the State Trust Company, a foreign cor-
poration, one of the trustees in the deed of trust that
was being foreclosed, filed a like suit in the Federal
court at Kansas City, praying a receiver, foreclosure,
etc.

The only real controversy seems to have been in
regard to who should dominate the litigation. That
point was finally settled by agreement between the
plaintiffs, as attorneys in the Grannis suit, represent-
ing the Gulf Company on the one side, and the attor-
neys who had filed the other foreclosure suit in the
Federal court and who represented the creditor interest,

199 Sup.—4

on the other side; the substantial point in the agreement being that one set of receivers should be appointed by the Federal court who should have charge of the whole system of railroads from Kansas City to the Gulf, and that these plaintiffs and the attorneys who had commenced the suit in the Federal court were to be employed as the attorneys for the receivers along the whole line. After that agreement was reached an amended bill was filed in the Federal court in which this defendant, the Texas Company, and the Louisiana Company, were made parties defendant and their appearance was entered. Thereafter everything was harmonious and the cause proceeded to a final decree of foreclosure, a sale followed, and the property of the railroad companies passed into the ownership and possession of a corporation formed for the purpose by agreement of the parties called the Kansas City Southern Railway Company, and the receivership was wound up. Before the final decree the whole matter had been settled by agreement and the final proceedings in court were in accordance with the agreement; the agreement also covered other valuable railroad properties theretofore controlled by the Gulf Company, consisting of terminal railroads at Kansas City and at the Gulf end of the line.

In addition to the suits above mentioned there were other suits, in Texas, in Louisiana and Kansas, which are mentioned in the evidence, but those served their purpose, which seems to have been a race of diligence for the control of the litigation through receiverships and were dismissed when an agreement was reached.

The suit in the Federal court in Kansas City was begun in April, 1899, and ended (except as it may be yet retained for settlement of accounts and other details of administration) in March, 1900, and it is during that period that the plaintiffs in the suit at bar claim to have rendered the services to the defendant, the

Texarkana and Fort Smith Railway Company, for which this suit is brought.

During that period these plaintiffs received, as attorneys for the receivers, sums aggregating $21,833.33, and the attorneys who represented the creditor interest and who under the agreement first above mentioned were also attorneys for the receivers, received a like amount. These plaintiffs also received other amounts on account of services rendered in other suits that were more or less connected with the main litigation above mentioned, but neither the amounts so received nor those for services as attorneys for the receivers covered the services sued for in this case.

March 30, 1900, these plaintiffs filed a petition in the foreclosure suit in the Federal court, asking to be allowed counsel fees for services to the Gulf Company in the sum of $3,000, to the Texarkana & Fort Smith Company (this defendant) in the sum of $1,000, and a like sum, $1,000, for services to the Louisiana Company; afterwards that petition was amended increasing the claims to $10,000, against each company, and suits in the circuit court of Jackson county were filed against those three companies respectively each for $10,000. That petition is still pending in the unfinished business of the foreclosure suit in the Federal court. Plaintiffs in their testimony explained that the former claim was for services rendered between the 1st and the 28th of April, 1899, and the latter embraced services rendered during the whole litigation down to the final decree and the master's report. According to the plaintiffs' testimony the nature of the services rendered was in watching and guarding the interest of the three railroad companies respectively in the negotiations leading up to the reorganization agreement, and in seeing, during the litigation and its culmination, that the companies they represented got what was coming to them in the way of their positions in the reorganized company, and that

those services were well worth $10,000 for each company, especially so as measured by the standard of value put upon the services of the attorneys who represented the creditor interest whom they said were allowed by the court and paid very much larger sums.

The testimony on the part of the defendant tended to prove that the plaintiffs had very little to do with the negotiations leading up to the re-organization agreement or with the litigation and that what they did was of no value to the railroad companies whom they claim to have represented.

The cause was tried by the court — jury waived —and resulted in a judgment for the plaintiffs for $10,-000, from which defendant appeals.

This is the second one of the three suits above mentioned brought by these plaintiffs against the railroad companies respectively to recover for their legal services, that has reached this court. The first one that came here was the one against the Gulf Company, and in that we affirmed a judgment for the plaintiffs for $10,000. [Trimble v. Railroad, 180 Mo. 574.] This case rests on substantially the same state of facts that were in that case, with one point of difference only, and the decision in that must be decisive of this unless the point of difference referred to leads to a different result. The point of difference is this: the former suit was against the Gulf Company which, as we have seen, practically owned the two other companies and operated them. The evidence showed that the plaintiffs were employed by the Gulf Company while it was operating the whole system, that they rendered services to the two other corporations for several years prior to those foreclosure suits and always rendered their bills to the Gulf Company who paid them. As a practical business matter there was nothing in that practice that would estop the plaintiffs from asserting a claim for such services against the Texas Company by its own name if they

had seen fit to do so. But knowing as the plaintiffs did that the Gulf Company held the purse of the Texas Company and directed its affairs, it was natural that they should apply to the Gulf Company for their pay, there was no other source from which payment could be expected. But when the receivers were appointed the Gulf Company was no longer in receipt of the earnings of the Texas Company, and, though still owning its stocks and bonds, had nothing of its revenue from which to pay its debts. When that change of conditions came about there was no reason why the plaintiffs in rendering services to the Texas Company should be presumed to be doing so with the understanding that they were to look to the Gulf Company alone for payment.

The plaintiffs in the beginning were employed by the Gulf Company, they never had an express contract with the defendant company, under their employment by the Gulf Company they rendered services to all the companies under its control, the defendant included, and, without any express change in the relation, the plaintiffs, according to their evidence, continued to serve the companies until the coming in and confirmation of the master's report in the Federal court. Defendant insists that under those conditions no implied contract arises. The argument is that the defendant company with all its stock and bonds in the hands of the Gulf Company, and all its property inevitably destined to be swept away in the foreclosure suit, was helpless, it was incapable of making any contract or of consenting to anything that might be done in its behalf. That is defendant's main point of resistance in this case. But in fact the defendant had its offices and officers, as the law of Texas required, in that State. We may infer from the conditions that the Gulf Company as owner or controller of the stock elected the officers and directors and conceded to them control only

to the extent that the law of Texas required, still the power to make contracts for the corporation in contemplation of law existed in the officers and directors, and though their acts may have been influenced or dictated by those who held the stocks and bonds of the corporation, still they were the acts of the corporation. Officers and directors of a corporation though laboring under an influence can, by their conduct, give rise as well to an implied contract as they can to a contract by express agreement. If we should say that there can be no implied contract arising out of their conduct because they were not free to act, but yielded to pressure, we would also have to say that their express contract was for the same reason without legal effect. The stockholders of a corporation direct its business as they think is best for their own interest, and if it so happened that the persons who own the stock in one company are also the owners of the stock in another company and conceive it to be to their interest to make the one corporation subservient to the other, they have a right to do so, because they are dealing with their own. What is here said is of course subject to this qualification, that is, that the conduct of the stockholders rendering one corporation subservient to another is valid only when it is not in violation of any law forbidding it; but there is no such question here, we are now dealing with a subject in which an owner of two properties sees fit to use one to the advancement of the other or both to a mutual advancement. In such case neither corporation loses its corporate entity. Helpless the Texas corporation may have been when all its stocks and bonds were given up as collaterals to the mortgage bonds of the Gulf Company and when its physical property was taken out of the hands of its officers by the receivers, but in that condition it was practically not worse off than the Gulf Company itself when it could not pay its debts and the receivers had

taken possession of everything of value that belonged to it. Even now after the floors of its treasury house have been swept and garnished by a master in chancery, the defendant corporation shows that it is still alive and with vigor enough to defend this suit, and interest sufficient to choose its counsel from among the ablest lawyers in the State. It may be that after the foreclosure suit was begun little could be done in behalf of this defendant, that the end was inevitable, still the corporation existed, its officers were yet alive and they had the right to strive for the best terms they could obtain. If services in that effort were made by these plaintiffs in behalf of the defendant corporation with the knowledge of its officers and under such circumstances as justify an inference that they approved and encouraged what was being done, we are not prepared to say that because of the desperate straits into which the corporation had fallen a contract for the payment of the value of the services rendered could not be implied. Whether in point of fact any real benefit was derived from the services rendered, the testimony for the plaintiffs and that for the defendant are widely apart. It is a question of fact and the trier of the facts has made the finding and with that we must be content.

It was shown in the evidence that in some of the suits mentioned the plaintiffs occupied, at least nominally, positions antagonistic to the interests of their clients, but that was never really so, in all that they ever did they were loyal to the interests of their clients.

The criticisms of the rulings of the court in giving, modifying and refusing instructions are based on the propositions above discussed and what we have said of them applies to the rulings on the instructions.

It is argued that the judgment in the suit against the Gulf Company is a satisfaction of this claim; but in the first place there is no such defense set up in the

answer, nor is there any proof or even suggestion of satisfaction of that judgment, while the foreclosure decree and proceeding thereunder indicate that there is as little left in the treasury of the Gulf Company as there is in that of the defendant; and in the second place, the plaintiffs' petition in the Federal court shows that their claim against one company is independent of that against the other, and the three suits all pending at the same time in the circuit court of Jackson county negative the idea that the claim against one is merged in that against the other.

We find no error in a matter of law in the record. The judgment is affirmed.

All concur.